IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES ROBERT KLINE, JR.,
and MARILYN DEAN KLINE,
husband and wife,

      Plaintiffs,

      v.            No.  12-CV-00955 WJ/RHS

STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois Insurance Company,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFEFNDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by State Farm Fire and Casualty Company ("State Farm" or "Defendant")) on January 23, 2013 **(Doc. 19)**.  Having reviewed the parties' briefs and applicable law, I find that Defendant's motion is well-taken and shall be granted.

### BACKGROUND

This case was initially filed in the First Judicial District Court, Count of Santa Fe, State of New Mexico, on August 1, 2012, and removed to federal court on September 12, 2012. Plaintiffs' claims against Defendant arise from Defendant's refusal to defend and indemnify Plaintiffs against the claims brought against them by Daniel and Judith Gresham ("the Greshams") in the New Mexico state district court action.

Plaintiffs contend that they made a timely demand for coverage and that the allegations of the Greshams' complaint in the underlying state court case ("the Greshams' Complaint") trigger Defendant's duty to defend and indemnify Plaintiffs under both the homeowners and umbrella

policies. In particular, the Gresham Complaint alleges the Plaintiffs negligently misrepresented the condition of the residence, that the Greshams relied on the alleged misrepresentations to their detriment, and that they have suffered damages as a result of the expenses they incurred in repairing the problems. Plaintiffs contend that the negligent misrepresentation claim and alleged damages fall within the scope of coverage afforded under both the homeowners and umbrella policies. Plaintiffs contend that Defendants refusal to defend them in the state court claim constitutes a breach of the terms of the insurance policies and insurance bad faith under New Mexico law. Plaintiffs allege they have incurred damages in the form of defense costs with respect to the Gresham suit and that they will incur additional damages should a judgment be entered against them. The federal complaint alleges breach of insurance contract, bad faith insurance practices and seeks a declaratory judgment in favor of Plaintiff.

State Farm claims that it has no duty to defend or indemnify Plaintiffs against the claims made by the Greshams in the underlying lawsuit, under the terms, conditions, limitations and exclusions of the insurance contract at issue.

A.  The Policies—Homeowners' Policy

State Farm issued a Homeowners' Insurance Policy to Plaintiffs ("Homeowner's Policy" for property they owned in Santa Fe, New Mexico ("Santa Fe property"). Dates of coverage in the Policy were October 5, 2006 to October 5, 2007. Defendant also issued a Personal Liability Umbrella Policy to Plaintiffs ("Umbrella Policy") which provides coverage for claims covered under the terms of the homeowners' policy in excess of the $100,000 limit of the homeowners' policy, to a maximum of $1,000.000.

The Homeowners' Policy contains the following relevant definitions:

7.   "occurrence," . . . means an accident, including exposure to conditions, which results in:

>    a.  bodily injury; or
>    b.  property damage;
>
> during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one "occurrence."
>
> 8.  "property damage" means physical damage to destruction of tangible property, including loss of use of this property.  Theft or conversion of property by an insured is not "property damage. . . ."

Doc. 1-4 at 13.[1]

Section II of the Homeowners' Policy contains the following provisions for Personal Liability coverage:

> COVERAGE L – PERSONAL LIABILITY
>
> If a claim is made or suit is brought against an insured for damages because of bodily  injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1.  pay up to the limit of liability for the damages for which the insured is legally liable; and
>
> 2.  provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability . . . .

Doc. 1-5 at 8.

The Homeowners' Policy contains the following **Exclusions**:

> 1.  Coverage L and Coverage M 'medical payments, not relevant here] do not apply to:…
>
>    a.  bodily injury or property damage:
>
>       (1)  which is either expected or intended by the insured; or
>       (2)  which is the result of willful and malicious acts of the insured;…
>
> 2.  Coverage L does not apply to:

---

[1]  The pertinent exhibits are part of the documents removed from state court.  *See* Doc. 1.

      b.    **property damage to property currently owned by any insured;**

      c.    property damage to property rented to, occupied or used by or in the care of any insured….

Doc. 1-5 at 10 (emphasis added). The Policy Period is defined as applying only to loss or property damage "which occurs during the period this policy is in effect." Doc. 1-5 at 12.

B.    <u>The Policies—Umbrella Policy</u>

The Personal Liability Umbrella Policy Agreement appears to use "loss" instead of "occurrence", and contains the following definitions:

    6. "loss" means:

      a.    an accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one loss; or

      b.    the commission of an offense, or series of similar or related offense, which result in personal injury during the policy period…

Doc. 106 at 5.

The Umbrella Policy defines "property damage" as "physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction."[2] The Personal Liability Umbrella Policy contains the following **Exclusions:**

We will not provide insurance:

2. for personal injury or property damage:

      a.    which is either expected or intended by you; or

      b.    to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

---

[2] Defendant provided portions of the policies, but was so general in its references so that the Court was required to conduct a search of numerous pages of the policies in order to locate the specific provisions. The Court was unable to locate the definition of "property damage" in the policy portions provided by Defendant, but Plaintiffs' Exhibit B provides this supporting information.

4

   3. for property damage to:

    a. your own property.

Doc. 1-5 at 26.

  The Klines' Homeowners' Policy expired on October 5, 2007 at the latest, and the Umbrella Policy was cancelled effective August 22, 2007.

C. <u>The Sale of House and Underlying Complaint</u>

  On or about July 26, 2007, the Klines closed on the sale of their Santa Fe property. The property was purchased by the Greshams. On March 28, 2011, the Greshams filed a lawsuit in the First Judicial District Court for the State of New Mexico, County of Santa Fe, Cause No. D-101-CV-2011-0155, in which Plaintiffs are named as co-defendants. In that lawsuit, the Greshams alleged that the Klines made fraudulent and negligent misrepresentations concerning the condition of the property. According to that complaint, the Klines provided the Greshams with a written disclosure that made several representations, including statements that there were no problems with the interior walls, ceilings, doors, windows; that the residence did not have any significant cracks in foundations, walls, interior walls, slab floors, or ceilings. Relying on these representations, the Greshams purchased the Santa Fe property.

  The complaint in the underlying lawsuit continues to allege that these representations were false because the residence had, in fact, experienced unusual cracking, movement and related damage, including, but not limited to, separation of the portal from the residence. The Greshams claim that the Klines caused the cracking, movement and related damage to be covered over so that they could not be noticed when the Greshams purchased the property. The Greshams allege that the Klines owed a duty to the Greshams to exercise reasonable care and prudence to disclose that the residence had experienced unusual cracking, movement and related

5

damage; and that the Klines breached that duty and acted in a negligence and fraudulent manner by failing to do so.  The Greshams are seeking damages including but not limited to, costs to repair the damage to the residence and to prevent further movement.  Doc. 1-6 at 8 (underlying state court complaint).

In this federal lawsuit, the Klines allege that State Farm failed to defend and indemnify the Klines in the underlying state court lawsuit.

## DISCUSSION

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

Plaintiffs request additional discovery under Fed.R.Civ.P.56(d) in order to respond to Defendant's summary judgment on their claim brought under the New Mexico Insurance Practices Act, particularly with regard to their bad faith claim.  This request will be denied, first

because the request is not sufficiently specific,[3] and secondly, because the need for further discovery will become moot with the Court's ruling on this motion.

The facts recited above are undisputed; the parties disagree about whether the terms of the policies are ambiguous, and how the law should be applied to these facts.

**I.      Relevant Law**

The duty to defend arises out of the nature of the allegations in the complaint. *City of Albuquerque v. BPLW Architects & Engineers, Inc*., 147 N.M. 717 (Ct. App. 2009).   If the allegations on the face of the complaint are potentially or arguably within the scope of coverage, the insurer is obligated to defend. *American Gen. Fire & Cas. Co. v. Progressive Cas. Co*., 110 N.M.741, 744, 799 P.2d 1113, 1116 (1990).   An insurer's duty to defend is broader than its duty to indemnify and is triggered if the allegations against its insured state any grounds coming within the terms of the policy. *Hartford v. Gandy Dancer,* 864 F.Supp.2d 1157, 1193 (D.N.M. 2012); *Servants of the Paraclete, Inc. v. Great Am. Ins. Co.,* 857 F.Supp. 822, 832 (D.N.M. 1994).   The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage. *Windham v. L.C.I.2, Inc*., 268 P.3d 528, 533 (Ct.App. 2011).

Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy. *Lopez v. New Mexico Public Schools Ins. Authority,* 117 N.M. 207, 209, 870 P.2d 745 (1994).   Unambiguous insurance policy language is construed in its usual and ordinary sense. *W. Commerce Bank v. Reliance Ins. Co.,* 105 N.M.

---

[3]  To invoke the shelter that rule 56(d) provides, a party must identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts. *See Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992).   Plaintiffs' Rule 56(d) Affidavit states that the 630 pages of discovery "have not been fully digested and evaluated by Plaintiffs' counsel nor by Plaintiffs' expert" by the time the response was filed.  Plaintiffs also state that certain depositions have not been taken.  These statements are insufficient to satisfy Rule 56(d)'s specificity requirements.  *See* Pltffs' Ex. 5.

346, 348 (1987).  Any doubts about whether the allegations are within policy coverage are resolved in favor of the insured.  *State Farm Fire & Cas. Co. v. Ruiz*, 36 F.Supp.2d 1308, 1312 (D.N.M. 1999).

**II.     Analysis**

"The interpretation of an insurance policy and the determination of the policy-dictated rights and obligations are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. U.S. Fidelity*, 143, F.3d 5, 8 (1st Cir. 1998).

A.     <u>Negligent Misrepresentation Claim is Not an "Occurrence" Under the Policies</u>

Plaintiffs contend that the Greshams' underlying state court complaint clearly allege both an "occurrence" and a "loss" resulting in property damage.  It is accurate to say that both policies similarly define "occurrence" and "loss" as an accident resulting in personal injury, bodily injury or property damage during the policy period, but the Court disagrees with the rest of Plaintiffs' contention that the "occurrence" and "loss" resulted in the property damage at issue in this case.

In support of their contention that negligent misrepresentation claims can be considered an "occurrence" under the policies and under New Mexico law,  Plaintiffs rely on *Hartford Fire Ins. Co. v. Gandy Dancer, LLC,* 864 F.Supp. 2d 1157, 1199 (D.N.M. 2012). [4]   In that case, a railway operator misrepresented to a landowner that it had authority to enter onto his property and reconstruct a water diversion system.  The operator proceeded, believing that its easement permitted it to make improvements to, and to reconstruct, a water diversion system.  The work eventually resulted in flooding of adjacent property.  United States District Judge James O. Browning concluded that the negligent misrepresentation claim alleged "property damage" arising from an "occurrence" under the operator's commercial general liability policy.

---

[4]   The parties appear to agree that New Mexico law governs under the policies.

8

However, the *Gandy Dancer* facts are quite distinguishable.  In that case, the railway operator's negligent misrepresentation was the direct cause of the resulting property damage, which would not have occurred had those misrepresentations not been made.   In the present case, the Kline's alleged misrepresentations cannot reasonably be said to have *caused* the "property damage" referenced in the underlying lawsuit.  In other words, the Kline's alleged misrepresentations to the Greshams did not result in the residence's cracking, movement and related damage and so could not constitute an "occurrence" resulting in "property damage" as defined in the State Farm policies.

A case cited by Defendant is more consistent with the undisputed facts in this case.   In *Hartford Shipp v. State Farm Fire Cas. Co.*, the sellers provided a disclosure representing that no damage from an active infestation of termites or other wood-destroying insects required repairs of the house, and that there had been no previous repairs made for such damage.  2007 WL 713152  (5th Cir. 2007).  The buyers eventually discovered termite damage in their home, and filed suit against the sellers.  The court held that the "property damage" that occurred was from termite infestation, and not from the seller's misrepresentation.  Thus, the negligent misrepresentation claims were not "occurrences" under the liability policy.

The facts in this case are similar to *Shipp*.  There is nothing ambiguous about the relevant policy provisions or the definitions contained in the policies.   Plaintiffs conjure up the existence of ambiguities that simply do not exist.  *See* Resp. at 11.  For example, they argue that it is not clear whether the phrase "during the policy period" applies to "occurrence" or to "property damage," but also argue that under either scenario, the negligent misrepresentation claims would qualify as "occurrences"—which makes it puzzling as to why Plaintiffs are presenting this

argument in the first place.[5]  At any rate, the Court finds it to be very clear that the phrase "during the policy period" applies to "occurrence," given the indenting of both subsections (a) and (b) (pertaining to "bodily injury" and "property damage") above the phrase.  Also, the use of punctuation sets apart the phrase "during the policy period" from *both* subsections, indicating that the phrase applies to the word "occurrence" above those subsections.  What the Court has taken the time to explain here is quickly evident simply upon looking at the clear and unambiguous language in the policy.

Plaintiffs also contend that the policies do not specify that "occurrence" or "loss" resulting in "property damage" must occur during the policy period.   The Court assumes this is Plaintiff's way of arguing that an ambiguity exists as to this language, except that this argument has no point because Defendant does not dispute that the alleged misrepresentations were made during the policy period.  Also, Plaintiff's contention has no support anywhere in the briefs, and is in fact directly contradicted by the plain language in the Homeowners' Policy, which defines the policy period as applying "only" to loss or property damage "which occurs during the period this policy is in effect."  Doc. 1-5 at 12.

B.     The Exclusions Apply

Questions related to State Farm's duty to defend or indemnify are more dispositively answered by considering the Exclusions in both policies.  It is undisputed that the title to the residence transferred to the Greshams in July of 2007, while the policies were still in effect.   It is also undisputed that the Kline's alleged misrepresentations occurred prior to the sale of the house, and prior to the title transfer from the Klines to the Greshams.

---

[5]  Plaintiffs contend that if "during the policy period" applies to "occurrence," then the alleged misrepresentations fall within this period because they were made prior to the sale of the residence.  If, however, "during the policy period" describes "property damage," the policy would still provide coverage because it hidden property damage existed during the policy period.

Even assuming that the Gresham's negligent misrepresentation claims can be considered an "occurrence" that caused "property damage" as required under the policies (which cannot be under the undisputed facts), there is no coverage for this property damage under either policy. Both policies exclude personal liability claims for property damage to property on the insured's "own property" (under the language of the Umbrella Policy) or to property that is "currently owned by any insured" (under the language of the Homeowners' Policy). It is undisputed that the Klines owned and were living in the Santa Fe residence before it was sold to the Greshams and before title transferred to the Greshams. Therefore, any personal liability claims (such as claims against the insured for negligent or fraudulent misrepresentation) for property damage are clearly and unambiguously excluded under both State Farm policies; and State Farm has no duty to defend or indemnify.

The Court notes that, while it rules favorably to Defendant, it does not agree with Defendant's alternative basis for summary judgment. Defendant argues that when the Greshams filed suit against the Klines in March of 2011, the State Farm policies were no longer in effect and thus the negligent misrepresentation claims were outside of the policy period. However, the timing of a subsequent lawsuit has no bearing on whether an "occurrence" is within the policy period. *See United Nuclear Corp. v. Allstate Ins. Co*., 149 N.M. 574, 583-584, 252 P.3d 798, 807 - 808 (N.M.App., 2011) (judgment rev. on other grds., *United Nuclear Corp. v. Allstate Ins. Co.,* 285 P.3d 644 (Aug. 23, 2012)) (Under an "occurrence" based policy, an insurer provides coverage for "an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damages that was neither expected nor intended from the standpoint of the insured); *City of Santa Rosa v. Twin City Fire Ins. Co*., 140 N.M. 434, 436, 143 P.3d 196, 198 (N.M.App.,2006) (an occurrence insurance policy generally covers an error or

11

omission regardless of when the claim is made) (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978)).

## CONCLUSION

In sum, I find and conclude that the negligent misrepresentation claims in the underlying lawsuit are excluded from coverage in both State Farm policies because they do not constitute an "occurrence" which resulted in "property damage." Therefore, State Farm has no duty to defend or indemnify Plaintiffs in their underlying state court lawsuit.

Further, the Court finds and concludes that the negligent misrepresentation claims assert personal liability claims against the Klines, and both policies exclude coverage for personal liability claims for property damage to property owned by the insured. The Klines owned and lived in the Santa Fe residence prior to the transfer of title in July of 2007. Thus, the Greshams' claims asserted in the underlying state court lawsuit against the Klines are excluded from coverage, and State Farm has no duty to defend Plaintiffs in the underlying state court lawsuit.

The Court finds no ambiguities in any of the definitions or provisions in either policy. For these reasons, Defendant's motion for summary judgment shall be GRANTED.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 19)** is hereby GRANTED for reasons describe in this Memorandum Opinion and Order.

A separate Rule 58 Judgment will be entered separately.

_____
UNITED STATES DISTRICT JUDGE